UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THOMAS ERNEST CRESSMAN,

        Petitioner,

v.

SHIRLEE HARRY,

        Respondent.

_____/

Case No. 1:17-cv-793

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Thomas Ernest Cressman is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Michigan.  Petitioner pleaded guilty in the Muskegon County Circuit Court to four counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b.  On February 16, 2016, the court sentenced Petitioner as a habitual offender-second offense, Mich. Comp. Laws § 769.10, to serve, concurrently, four prison terms of 15 to 39 years.

On August 25, 2017, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner placed his petition in the prison mailing system on August 25, 2017.  (Pet., ECF No. 1, PageID.12.)

The petition raises three grounds for relief, paraphrased as follows:

    I.    The trial court abused its discretion in denying Petitioner's motion to withdraw his plea where counsel was not representing Petitioner competently and Petitioner claimed he was actually innocent.

    II.      Petitioner was denied his constitutional rights when the trial court denied him counsel of choice, and his right to present a defense by denying a continuance to retain counsel.

    III.      Petitioner was denied his state and federal rights to self-representation.

(Pet., ECF No. 1, PageID.6-9.) Respondent has filed an answer to the petition (ECF No. 6) stating that the Court should deny the petition because the grounds raised are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## **Discussion**

    I.      <u>Factual Allegations</u>

During the spring of 2015, the Muskegon County prosecutor charged Petitioner with acts of criminal sexual conduct against the daughter of his former girlfriend. (Muskegon County Circuit Court Docket Sheet, ECF No. 7-1.) The acts occurred 8 to 12 years before Petitioner was charged. (Mot. Hr'g Tr., ECF No. 7-3, PageID.187; Trial Tr. I, ECF No. 7-5, PageID.216-217.) He began sexually assaulting the child when she was five years old. (Prelim. Exam. Tr., ECF No. 7-2, PageID.133.) The assaults, consisting of digital/vaginal and oral/vaginal penetrations, continued for several years. (*Id.*, PageID.133-143.) The victim was seventeen years-old when she testified at Petitioner's preliminary examination on September 10, 2015. (*Id.*, PageID.132.)

Attorney Christopher Wilson, retained counsel, represented Petitioner in the early stages of the criminal proceedings. (Mot. Hr'g Tr., ECF No. 7-3, PageID.187-188.) The trial court

permitted Attorney Wilson to withdraw during October of 2015. The trial court appointed Muskegon County Public Defender Frederick D. Johnson, Jr. to replace Wilson.

On January 8, 2016, just days before Petitioner's scheduled trial, Petitioner indicated that he wanted to retain counsel to replace Attorney Johnson. The trial court indicated that Petitioner was welcome to retain counsel and, if counsel sought a continuance, the court would consider it. However, the court also noted that it was disinclined to grant that relief because trial was imminent, the prosecutor was ready to proceed, the complaining witnesses were ready to proceed, the crimes were already years old, and Petitioner had permitted months to pass after his prior retained counsel withdrew without retaining new counsel.

Putative new counsel was present on January 11, 2016, the day before trial. Absent an adjournment of the January 12, 2016, trial date, putative new counsel was unwilling to enter an appearance of Petitioner's behalf. (Mot. Hr'g Tr., ECF No. 7-4; Trial Tr. I, ECF No. 7-5, PageID.206-207.) The court was not willing to grant an adjournment. Petitioner then indicated that he wanted to represent himself. (Trial Tr. I, ECF No. 7-5, PageID.231.) The court informed Petitioner that he would have to proceed with the trial that day if he wanted to proceed in pro per. (*Id.*) Petitioner declined that offer. (*Id.*) The trial court ultimately denied Petitioner's request to represent himself for several reasons, including the court's belief that the request for self-representation was just a disguised motion to adjourn the trial. (*Id.*, PageID.236-237.) Petitioner, represented by Attorney Johnson, and the prosecutor proceeded to pick the jury.

The jury never heard any testimony. The next morning, Petitioner entered his plea based on a *Cobbs*[1] agreement to a minimum sentence of 15 years. Petitioner expressly admitted the digital/vaginal and oral/vaginal penetrations charged in the information. (Trial Tr. II, ECF No. 7-7, PageID.503-506.)

By the time of sentencing, however, Petitioner had second thoughts. He moved to withdraw his plea based on a claim that he was not responsible for the crimes charged. (*Id*., PageID.512.) The court determined that the interests of justice would be disserved if it granted the motion. (*Id*., PageID.513-514.) It denied the motion. (*Id*.) The court sentenced Petitioner as described above.

Petitioner, with the assistance of appointed counsel, sought leave to appeal in the Michigan Court of Appeals. He raised the same three issues presented in his habeas petition. By order entered September 8, 2016, the court of appeals denied leave. (Mich. Ct. App. Ord., ECF No. 7-9, PageID.523.) Petitioner then turned to the Michigan Supreme Court. That court denied Petitioner's pro per application for leave to appeal by order entered April 4, 2017. (Mich. Ord., ECF No. 7-10, PageID.667.) Petitioner then filed this petition.

II.     AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell*

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved the practice of judicial involvement in sentence bargaining. *Id*. at 211. In *Cobbs* the supreme court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose. *Id*. at 211-212. The parties may then base a plea and sentencing agreement on that number. *Id*. If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea. *Id*.

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially

5

indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

   III.  Petitioner's Right to Self-Representation (Habeas Issue III)

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI. At issue here is a corollary to that right, the right to self-representation. *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) ("The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms."). The clearly established federal law regarding self-representation is

expressed in two Supreme Court cases: *Faretta v. California*, 422 U.S. 806 (1975), and *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the structure of the Sixth Amendment right to the assistance of counsel:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.
>
> The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-821 (footnotes and citations omitted).

Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one. The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal

prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id*. at 834. Because a criminal defendant representing himself relinquishes that benefit, his waiver must be "'knowingly and intelligently'" made. *Id*. at 835. Moreover, the right to self-representation must yield to "'the dignity of the courtroom.'" *Id*. at 834 n.46. It is not a license to ignore the rules of procedure or engage in "obstructionist misconduct." *Id*.

In *Martinez*, 528 U.S. at 152, the Supreme Court concluded that the right of self-representation did not extend to appeals. In reaching its conclusion, the Supreme Court commented on the scope of the right of self-representation established in *Faretta*, stating:

> As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his own defense, and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation." A trial judge may also terminate self-representation or appoint "standby counsel"-- even over the defendant's objection -- if necessary. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

The trial court did not specifically reference *Faretta* or *Martinez* in evaluating Petitioner's request to represent himself. Instead, the court relied on several cases, including *People v. Williams*, 683 N.W.2d 597 (Mich. 2004). *Williams*, and the other cases cited by the trial court, ultimately relied on *People v. Anderson*, 247 N.W.2d 857 (Mich. 1976). In *Anderson*, the Michigan Supreme Court established three requirements that must be met before a criminal defendant in Michigan can proceed pro se:

8

> First, the request must be unequivocal . . . . Second, once the defendant has unequivocally declared his desire to proceed Pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . . . The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business.

*Anderson*, 247 N.W.2d at 859-860.  The *Anderson* court, however, drew its three requirements directly from the circumstances that swayed the *Faretta* court to recognize the right of self-representation.  *Id*. at 859 ("[T]he [*Faretta*] Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense.  The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate, competent, and understanding individual.")  Thus, considering Petitioner's request for self-representation under *Anderson* is consistent with, and not contrary to, clearly established federal law.

The trial court concluded that inviting further delay by changing counsel or permitting Petitioner to represent himself, would result in manifest injustice for the victims and the prosecution.  Accordingly, the trial court denied Petitioner's requests.

The trial court's consideration of the timeliness of Petitioner's requests and concern regarding the delay that would follow from granting them is in no way contrary to clearly established federal law.  In *Hill v. Curtin*, 792 F.3d 670 (2015) (*en banc*), the Sixth Circuit explained:

> *Faretta* did not establish a bright-line rule for timeliness.  Its holding does, however, necessarily incorporate a loose timing element. The *Faretta* Court explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial." It then held, "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Thus, to the extent that Faretta addresses timeliness, as a matter of clearly

9

> established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial.
>
> Beyond this loose limit, the *Faretta* Court did not address timeliness . . . . Although lower courts have since established rules regarding when a defendant must assert his right, . . . the Supreme Court has never defined the precise contours of *Faretta*'s timing element.  Nor did the Supreme Court announce any clearly established law on timeliness in *Martinez*. . . . Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

*Hill*, 792 F.3d at 678-79 (citations omitted, emphasis in original).

In light of the latitude afforded to state courts in determining the timeliness of a self-representation request, denial of such a request on the morning of trial is certainly not contrary to or an unreasonable application of clearly established federal law.  *Hill*, 792 F.3d at 678 ("'[*Faretta* ] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*' –not on the morning of trial."); *Jones v. Bell*, 801 F.3d 556, 564-65 (6th Cir. 2015) (concluding that state court's rejection of a self-representation request on the first day of trial was not contrary to *Faretta*).  Moreover, in *United States v. Cunningham*, 564 F. App'x 190 (6th Cir. 2014), the Sixth Circuit acknowledged that the timeliness determination contemplated by *Faretta* is "multifaceted." *Id.* at 193.  "Courts consider not only the actual timing of the defendant's request, but also any threat posed to the orderly progression and integrity of the trial by a defendant's dilatory intent . . . ." *Id.*; *see also Robards v. Rees,* 789 F.2d 379, 383 (6th Cir. 1986) (noting that requests that are "timely" may be denied where "the defendants' request for self-representation is merely a tactic to secure delay in the proceeding."); *Halder v. Tibals*, 561 F. App'x 454, 463 (6th Cir. 2014) ("This court has explained that a request to represent oneself is untimely . . . '[if it] is merely a tactic to secure delay in the proceeding.'").  Accordingly, the trial court's denial of Petitioner's request on the morning of trial based on its determination

10

that Petitioner intended to delay the proceedings was not contrary to or an unreasonable application of clearly established federal law.  Moreover, the trial court's factual determination regarding Petitioner's attempt to delay the proceedings by way of his request for self-representation is not unreasonable on this record.

The state court's refusal to permit Petitioner to represent himself at trial was entirely consistent with—not contrary to or an unreasonable application of—clearly established federal law.  The state appellate court's factual assessment of the record in support of its analysis is also eminently reasonable.  Accordingly, Petitioner is not entitled to habeas relief on his claim that the trial court should have permitted Petitioner to represent himself.

## IV.    Petitioner's Right to Counsel of His Choice (Habeas Issue II)

Another element of the Sixth Amendment right to counsel is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without limits.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) ("[T]he right to counsel of choice is not absolute.").  The right must be balanced against "the public's interest in the prompt and efficient administration of justice."  *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (footnote omitted).  Exercise of the right "may not be used to unreasonably delay trial."  *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).

The trial court's findings regarding the detrimental impact of further delay are no less reasonable when balanced against Petitioner's right to counsel of his choice than they were when balanced against Petitioner's right to represent himself.  Critically, Petitioner's desire to change counsel was simply a matter of preference.  (Trial Tr. I, ECF No. 7-5, PageID.226-230.) He did not contend that his appointed counsel, Attorney Johnson, had failed him in any respect.

(*Id*.)  There is nothing in the trial court's weighing of the competing interests here that is contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his claim that he was denied counsel of his choice.

        V.        Petitioner's Right to Present a Defense (Habeas Issue II)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).  This right also, however, is "'not without limitation' . . . [t]he right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'"  *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (citing *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

The right to present a defense is typically implicated in the context of a trial court's exclusion of certain evidence, for example, evidence excluded by application of a state rape shield law.  *See, e.g., Gagne v. Booker*, 680 F.3d 493 (6th Cir. 2012).  Application of the principles of *Crane* and *Lucas* in that context require a case-by-case balancing of the state's interest in excluding the evidence against the defendant's interest in presenting it.  *Id*. at 516.  "[N]either interest is superior *per se*."  *Id*.

Such an analysis in Petitioner's case is entirely one-sided.  The alleged "exclusion" of a defense here followed from the trial court's denial of an adjournment.  The state's interest in avoiding delay is discussed above.  That interest must be balanced against Petitioner's interest in presenting his defense—a defense he never elucidates.  It is apparently based on a list of thirteen witnesses he presented to his appointed defense counsel on the morning of trial.  (Pet'r's Br., ECF

No. 2, PageID.22.)  Counsel noted that witness names Petitioner had offered him previously had not provided relevant, beneficial, or admissible evidence.  (Trial Tr. I, ECF No. 7-5, PageID.219-226.)  Petitioner offers nothing to contradict that assessment.  Under the circumstances, Petitioner has failed to put anything on the scale to offset the state's interests in avoiding delay of the criminal process.  Accordingly, the state's "exclusion" of the defense is neither contrary to, nor an unreasonable application of, clearly established federal law.  Again, Petitioner is not entitled to habeas relief.

> V. <u>Waiver by Guilty Plea (Habeas Issues II and III)</u>

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including Petitioner's claims of ineffective assistance of counsel that do not relate to the validity of the plea, Petitioner's claim that he was denied his right of self-representation, and Petitioner's claim that he was denied counsel of his choice.  *See United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001) (concluding that pre-plea ineffective-assistance-of-counsel-claims were waived by the defendant's guilty plea); *accord Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) ("Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the. . . *Tollett* rule."); *Werth v. Bell*, 692 F.3d 486, 496-99 (6th Cir. 2012) (court held there is no clearly

established federal law holding that a guilty plea does not waive a self-representation claim); *White v. Mackie*, No. 1:17-cv-922, 2017 WL 6462362, at *4 (W.D. Mich. Dec. 19, 2017) ("[I]n choosing to plead guilty after his continuance was denied, Petitioner waived his claim to counsel of his choice."). Petitioner's waiver, therefore, offers an alternative ground to deny his claims that the state courts denied his Sixth Amendment rights to counsel of his choice or self-representation.

        VI.       <u>Petitioner's Voluntary and Intelligent Plea (Habeas Issue I)</u>

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's challenge to his plea, expressed as a challenge to the trial court's improper failure to permit Petitioner to withdraw it, raises a state law claim. There is no federal due process right to seek to withdraw a guilty plea. *Hynes v. Birkett*, 526 F. App'x 515, 521 (6th Cir. 2013). Michigan Court Rule 6.310 sets out circumstances where the court should permit a defendant to withdraw a plea; however, the rule does not give rise to a federal due process right. *Hynes*, 526 F. App'x at 521.

Moreover, Petitioner's claim that he is actually innocent of the charges—offered subsequent to his sworn testimony acknowledging factual guilt at the plea hearing—does not state a valid habeas claim:

> [T]he trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief. Nor does petitioner's assertion of innocence after the plea was entered render involuntary his otherwise valid plea. As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D.Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970). Although *Hansen* was decided over forty years ago, this observation holds true today. It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n. 28 (E.D.Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also, Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

*Walk v. Mackie*, No. 13-cv-14439, 2014 WL 4265814, at *13 (E.D. Mich. Aug. 29, 2014).

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find that a guilty plea is constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must

15

have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  Petitioner does not contend he is incompetent and Petitioner had adequate notice of the charges against him.

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Petitioner does not contend that he failed to understand the consequences of his plea.  Petitioner suggests that he was coerced into entering the plea, but not by threats or promises.  Instead he claims his counsel was allegedly unprepared to represent him.

A defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of

counsel may render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57. Petitioner rests his only federal constitutional challenge to his plea on this foundation.

Petitioner claims his counsel rendered ineffective assistance because he failed to develop Petitioner's claim of innocence through Petitioner's last-minute list of witnesses. As explained above, however, claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See Broce*, 488 U.S. at 569 (1989); *Tollett*, 411 U.S. at 267. On their face, Petitioner's claims of ineffective assistance with respect to counsel's failure to develop Petitioner's claim of innocence through the thirteen witnesses do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations. Such claims have therefore been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09.

Even if trial counsel's failures might have prevented the plea from being knowing and voluntary, *see Tollett*, 411 U.S. at 266-67, Petitioner would still have to satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel; the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court

must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.*

The Court need not proceed beyond the first prong here. Petitioner has failed to show that his counsel's preparation for trial fell short. Counsel represented, and Petitioner did not dispute, that they had discussed potential witnesses for the defense. Counsel determined that the witnesses, with one exception, could offer only irrelevant or inadmissible testimony. Petitioner does not challenge that assessment. Counsel conferred with the only witness that could offer admissible testimony. Counsel concluded that the witness's testimony was not beneficial to Petitioner's case. Petitioner does not challenge that assessment.

Instead, Petitioner generally challenges counsel's preparedness based on counsel's reaction to a list of witnesses Petitioner presented to counsel for the first time the morning of trial. Petitioner's attempt to sandbag counsel's preparations for trial by withholding information from his counsel until that morning do not establish any failure in counsel's performance. Therefore, Petitioner has failed to demonstrate that counsel's performance was objectively unreasonable, and Petitioner's attempt to show that his plea was involuntary or unknowing because of counsel's shortcomings collapses.

The state court's rejection of Petitioner's claims that his plea was unknowing and involuntary is neither contrary to, nor an unreasonable application of clearly established federal law. Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Dated:  August 2, 2018               /s/ Ray Kent
                                     United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).